UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

*Plaintiff,*

v.   Case No. 2:22-cr-20678

CHASE FARMER,   District Judge
Gershwin A. Drain

*Defendant.*

_____/

### ORDER DENYING MOTION TO DISMISS INDICTMENT [#17]

Before the Court is Defendant Chase Farmer's ("Defendant") Motion to Dismiss the Indictment against him. ECF No. 17.[1] The Court heard argument by the parties on March 5, 2024. Having reviewed the briefing and argument on this matter, the Court will deny Defendant's Motion.

---

[1]Defendant filed his Motion to Dismiss prior to the Government's Superseding Indictment, which is the operative Indictment in this matter. *See* ECF Nos. 1, 17, 23. The Superseding Indictment does not moot the Motion to Dismiss, however, as it does not materially alter the charges alleged. Though a superseding indictment "supplants the earlier indictment and becomes the only indictment in force . . . a superseding indictment does not moot a pending motion to dismiss where the superseding indictment 'did not materially alter the nature [and] scope' of the charged offense." *See United States v. Scott*, No. 10-20235, 2015 U.S. Dist. LEXIS 52632, at *3 (E.D. Mich. Apr. 22, 2015) (quoting United States v. Goff, 187 F. App'x 486, 491 (6th Cir. June 27, 2006)).

1

I. BACKGROUND

Defendant is a Federal Firearms Licensee (FFL), and he owns the FFL "Shall Not Be Infringed, LLC." ECF No. 24, PageID.363. As an FFL, Defendant is an authorized dealer in common firearms and is licensed to buy, sell, transfer, and manufacture firearms and devices, including machineguns. ECF No. 17, PageID.56–57. Accordingly, Defendant manufactured 47 machineguns while operating his business. *Id.* at PageID.57.

In 2022, The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began investigating Defendant for unlawfully importing Glock conversion devices and Drop-In Auto Sears (DIAS) from Russia via a Russian website. ECF No. 24, PageID.362.[2] The ATF found that Defendant ordered conversion devices on multiple occasions during the winter of 2020 and 2021, paid for them using a personal PayPal account, and received them at various residences in the Eastern District of Michigan. *Id.* at PageID.363. On September 27, 2022, the ATF searched Defendant's residence and business. ECF No. 24, PageID.364. During the search, the ATF recovered two assertedly Russian-made DIAS and found that 18 other devices Defendant had purchased were no longer in his possession. *Id.* at PageID.364.

A Grand Jury charged the First Superseding Indictment (the "Indictment") on

---

[2]Such devices are assertedly used to convert semi-automatic firearms, which fire one shot at the pull of a trigger, into automatic weapons, which fire until the trigger is disengaged.

January 17, 2024. ECF No. 23. Defendant was charged with (1) Receipt and Possession of Unlawfully Imported Firearms, 26 U.S.C. §§ 5844, 5861(k), 5871; (2) Unlawful Possession of a Machinegun, 18 U.S.C. § 922(o); (3) Unlawful Transfer of a Machinegun, 18 U.S.C. § 922(o); and (4) Failure by a Federally Licensed Dealer to Keep Proper Records, 18 U.S.C. § 922(b)(5). On November 8, 2023, Defendant filed a Motion to Dismiss all four Counts of the Indictment, arguing that the Indictment is deficient for failure to state an offense against him and for lack of evidence. ECF No. 17. The Government filed a timely Response on January 19, 2024.[3] It maintains that the Indictment must be upheld because it meets the low legal standard for sufficiency by clearly informing Defendant of the specific charges he faces. ECF No. 24.

## II. LEGAL STANDARD

"Grand jury indictments are presumed to be valid." *United States v. Boston*, No. 14-20383, 2018 U.S. Dist. LEXIS 23751, at *6 (E.D. Mich. Feb. 14, 2018). However, under Rule 12 of the Federal Rules of Criminal Procedure, a party may raise before trial a motion alleging that an indictment fails to state an offense. Fed. R. Crim. P. 12(b)(3)(v). When considering such motions, the Court takes the factual allegations of the indictment as true and focuses on the legal sufficiency of the

---

[3] On January 4, 2024, the Court entered the parties' Stipulation to Adjourn Motion Response Deadline. ECF No. 22. The Order extended the Government's deadline to January 19, 2024. *Id.* at PageID.354.

3

indictment. *United States v. Killingsworth*, No. 21-3028, 2022 U.S. App. LEXIS 3132, at *13 (6th Cir. Feb. 1, 2022). An indictment that is valid on its face may not be dismissed for assertedly inadequate or insufficient evidence. *United States v. Nwoke*, No. 18-20686, 2024 U.S. Dist. LEXIS 14638, at *2 (E.D. Mich. Jan. 26, 2024). Moreover, the allegations in the indictment are viewed in the light most favorable to the Government. *United States v. Weekes*, No. 17-20155, 2018 U.S. Dist. LEXIS 139334, at *5 (E.D. Mich. Aug. 17, 2018).

This Court has found that "[a]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *United States v. D'Anna*, 2015 U.S. Dist. LEXIS 55903, 2015 WL 1954490, at *6 (E.D. Mich. Apr. 29, 2015) (citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974)). Further, an "indictment is sufficient if it enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.*

### III.  ANALYSIS

Defendant does not dispute that the Indictment contains the elements of the offenses charged, fairly informs him of the charges against him, or enables him to plea in bar of future prosecutions for the same offense. *See Id.* Upon review, the Court finds that the Indictment satisfies these criteria, as each count identifies the relevant statutes, the elements of the offense, and the devices through which

4

Defendant allegedly violated federal gun laws. However, Defendant challenges the applicability of the charges and the evidence supporting the Indictment. For the following reasons, the Court finds that these arguments do not overcome the Indictment's presumption of validity .

### A. Count I

First, Defendant argues that Count I must be dismissed because he did not import a machinegun or, more broadly, any firearm. ECF No. 17, PageID.58. He asserts that he imported unfinished parts, Glock conversion devices and DIAS, that themselves could not be used to make a machinegun without a prior manufacturing process. *Id.* Defendant draws support from the Sixth Circuit's decision in *Hardin v. ATF*, 2023 WL 3065807. (6th Cir. Apr. 25, 2023). The *Hardin* court, according to Defendant, rejected the ATF's attempt to use its rule-making authority to define a bump stock as a machine gun since the device does not itself convert a firearm into an automatic weapon.[4] ECF No. 17, PageID.58. He argues that the ATF seeks to do the same here by attempting to inappropriately interpret "machinegun" to include the contested DIAS and Glock conversion devices. *Id.* at PageID.59.

In response, the Government highlights the term "machinegun" as defined by

---

[4] A bump stock "replace[s] a rifle's standard stock and free[s] the weapon to slide back and forth rapidly, harnessing the energy from the firearm's recoil either through a mechanism like an internal spring or in conjunction with the shooter's maintenance of pressure." Bump-Stock-Type Devices, 83 Fed. Reg. 66,514, 66,516 (Dec. 26, 2018) ("Final Rule").

5

the National Firearms Act:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, **by a single function of the trigger**. The term shall also include the frame or receiver of any such weapon, **any part designed and intended solely and exclusively, or a combination of parts designed and intended, for use in converting a weapon into a machinegun**, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

ECF No. 24, PageID.369 (citing 26 U.S.C. § 5845(b)). The Government argues that, in view of the underlined language, Defendant's position has been repeatedly rejected by multiple courts. *Id.* (collecting cases). It also argues that *Hardin* is inapplicable because Defendant "is not charged with possessing 'bump stocks,' and the United States is not relying on a ruling from the ATF that DIAS or Glock conversion devices are machineguns under the National Firearms Act." ECF No. 24, PageID.371.

The Government is correct that *Hardin* does not control here. In fact, the *Hardin* ruling was based in part on the finding that a bump stock does not produce an automatic weapon by a "single function of the trigger." *Hardin v. BATFE*, 65 F.4th 895, 898 (6th Cir. 2023). Rather, "one still needs to maintain constant forward pressure on the weapon's barrel-shroud or fore-grip . . . a semiautomatic rifle does not shoot automatically and thereby become a machinegun, simply by having a bump stock." *Id.* at 903.

This ruling is inapposite here, as the Glock conversion devices and DIAS that Defendant is charged with importing, once installed, convert semi-automatic firearms into fully automatics needing only the single pull of a trigger to fire multiple rounds. *See United States v. Putman*, No. 18-cr-20133, 2019 U.S. Dist. LEXIS 84689, at *6 n.1 (E.D. Mich. May 20, 2019) ("A drop-in auto sear (DIAS) is a device which, when combined with other fire-control parts, can convert a semi-automatic AR-15 to fully automatic. Although a DIAS is in actuality a gun part and not a gun itself, a DIAS is legally considered a 'machine gun' under 26 U.S.C. §5845(b)."); *Roe v. Dettelbach*, 59 F.4th 255, 257 (7th Cir. 2023) ("Drop-in auto sears can be installed into semi-automatic guns; once in place, they make the weapon fully automatic, meaning the user must pull the trigger only once to fire repeated shot."). Defendant does not offer any explanation as to how bump stocks are functionally the same as the devices at issue here. Thus, the Sixth Circuit's exclusion of bump stocks from machinegun regulation in *Hardin* does not apply to the devices at issue here.

Defendant argues, nonetheless, that the Glock conversion devices and DIAS cannot be machineguns because they require significant machining before they can be useful. ECF No. 17, PageID.59. This Court has previously rejected this argument. In *United States v. Dodson*, the defendant argued that "the items seized by officers during the execution of the search warrants cannot, in and of themselves, produce a functioning firearm." No. 11-20548, 2012 U.S. Dist. LEXIS 21058, at *7 (E.D.

Mich. Feb. 21, 2012). He argued that "a DIAS is not 'designed to shoot,' is not 'readily restored to shoot,' is not the 'frame or receiver' of a machinegun, and it not a 'combination of parts from which a machinegun can be assembled.'" *Id.* at *8. This argument failed, as the court found that § 5845 "does not state that a DIAS, alone, must be able to convert a semi-automatic weapon to a fully-automatic weapon." *Id.* at *10. Instead, it found that "[b]ased upon the plain, unambiguous language of the statute, a DIAS is a combination of parts designed and is intended for use in converting a semi-automatic firearm to a fully-automatic firearm." *Id.*

For these same reasons, Defendant's challenge is unavailing. He argues that "Mr. Farmer clearly did not import a firearm . . . What Mr. Farmer allegedly imported were unfinished machine parts that would require going through a manufacturing process to become useful parts to assemble a machinegun." ECF No. 17, PageID.58. However, Defendant admits through his argument that the devices recovered pursuant to the search warrant are, unlike bump stocks, parts meant to assemble a machinegun. Further, Defendant does not point to a single ruling that a DIAS, Glock conversion device, or any other machinegun device must be immediately ready for outfitting in a firearm without any additional work to qualify under the statute. He also fails to show how his position is at all supported by the statutory language.

There is no dispute that Defendant imported "part[s] designed and intended solely and exclusively, or a combination of parts designed and intended, for use in

8

converting a weapon into a machinegun." *See* 26 U.S.C. § 5845(b). This is enough to support the indictment. The fact that additional work or machining is required to make the parts useful is irrelevant. Accordingly, Defendant's challenge to Count I fails, and the Court finds that Count I states a legally sufficient claim.

### B. Count III

Defendant's challenge to Count III must also fail. Under Count III, Defendant is said to have "knowingly and unlawfully transferred machineguns . . . in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2). Section 922(o) states in relevant part that "it shall be unlawful for *any person* to transfer or possess a machinegun." The statute makes exceptions for transfers related to lawful possession predating 1986 and for "a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof . . ." 18 U.S.C. § 922(o)(A)–(B). "This exception allows certain arms dealers to possess and transfer machineguns when they intend to sell them to police departments or government agencies." *Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446, 479 n.6 (6th Cir. 2021) (White, J. dissenting). Stated another way, under 18 U.S.C. § 922(o), "it is a federal crime for anyone, including a licensed firearms dealer, to possess a machinegun" subject to the above exceptions. *United States v. Aguilar-Espinosa*, 57 F. Supp. 2d 1359, 1364 n.3 (M.D. Fla. 1999) (quoting *United States v. Bailey*, 123 F.3d 1381, 1385, n.3 (11th Cir.

9

1997)).

Defendant's only challenge to Count III is that he "held a license to manufacture machineguns." ECF No. 17, PageID.59.[5] The Government does not contest this fact. ECF No. 24, PageID.363. However, irrespective of Defendant's license, he is accused of receiving unlawfully imported items, as discussed with respect to Count I, and unlawfully transferring them to an entity other than a state or federal agency or police department as required by statute. His possession of a firearms license does not ward off criminal liability in this instance, as the plain language of the statute prohibits "any person" from unlawfully possessing or transferring a machinegun. There is no exception made for federal firearms licensees. For these reasons, Defendant's challenge to Count III fails, and Count III states a legally sufficient claim.

**C. Counts II and IV**

Lastly, Defendant challenges Counts II and IV of the Indictment, arguing that they "must be dismissed due to lack of evidence." ECF No. 17, PageID.60. Under Count II, Defendant is charged with the unlawful possession of machineguns. ECF

---

[5] Defendant holds Type 01 and Type 07 federal firearms licenses. ECF No. 17, PageID.56. A Type 01 licensee is an authorized "Dealer in firearms other than destructive devices," and a Type 07 licensee may manufacture the same. ATF, *Fact Sheet — Federal Firearms and Explosives Licenses by Types*, June, 2023, https://www.atf.gov/resource-center/fact-sheet/fact-sheet-federal-firearms-and-explosives-licenses-types.

No. 23, PageID.358. Under Count IV, Defendant is charged with the failure by a federally licensed firearms dealer to keep proper records. *Id.* The Court rejects Defendant's challenges to both Counts.

Defendant points out that Chapter 7.3.2. of the National Firearms Act Handbook does not require licensed firearms manufacturers to file a Form 2 notifying the ATF that a firearm has been manufactured until the close of the following business day. ECF No. 17, PageID.60. He contends that "[t]he government cannot prove when said firearms were manufactured and/or completed and it is Defendant's assertion that he was up late into the night . . ." *Id.* at PageID.61.

The Court declines to consider Defendant's arguments. Simply, Defendant invites the Court to weigh the evidence against him and to rule that said evidence is insufficient to support the charges. But "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001). This Court will deny a motion to dismiss "if it requires a pretrial test of the government's evidence." *United States v. Nwoke*, No. 18-20686, 2024 U.S. Dist. LEXIS 14638, at *3 (E.D. Mich. Jan. 26, 2024). For that reason, "a factual challenge to an indictment purporting to show insufficient evidence of a particular charge will not be considered." *United States v. Rumpf*, No. 1:14-cr-72, 2014 U.S. Dist. LEXIS 199999, at *3 (W.D. Mich. Dec. 30, 2014).

Whether facts or evidence support the charges asserted is a question for the fact finder and is not appropriate on a motion to dismiss. For this reason, Counts II and IV state legally sufficient claims, and Defendant's challenge fails.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment (ECF No. 17) is **DENIED**.

**IT IS SO ORDERED**.

Dated: March 8, 2024                                 /s/ Gershwin A. Drain
                                                     GERSHWIN A. DRAIN
                                                     U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 8, 2024, by electronic and/or ordinary mail.
/s/Lisa Bartlett
Case Manager