UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No.: 2:22-cr-20678
        Hon. Gershwin A. Drain

CHASE FARMER,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION [#31]

### I.    INTRODUCTION

On December 21, 2022, Chase Farmer ("Farmer" or "Defendant") was indicted on four counts of firearm offenses arising out of his unlawful importation and transfer of Glock conversion devices and Drop-In Auto Sears ("DIAS"). ECF No. 1; ECF No. 23; ECF No. 24, PageID.362. On November 8, 2023, Farmer moved to dismiss the indictment, arguing among other things that under the statute, he had not imported firearms, only parts. ECF No. 17, PageID.58. This Court rejected that argument, noting that the parts Farmer imported converted semi-automatic weapons into fully automatic weapons, which makes those parts fall

1

under the statutory definition of "machinegun" under 26 U.S.C. § 5845(b). ECF No. 27, PageID.385–86.

On July 15, 2024, Farmer filed the present Motion for Reconsideration of the Motion to Dismiss the Indictment and for an Evidentiary Hearing. He argues that an intervening change in the law, namely the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), requires this Court to reconsider the interpretation of the term "machinegun" and make an "independent evaluation" as to whether Farmer's actions violated federal law. ECF No. 31, PageID.405. The Government timely responded, arguing that *Loper Bright* is inapplicable to this case. ECF No. 35, PageID.829.

For the reasons given below, the Court **DENIES** Farmer's Motion for Reconsideration and for an Evidentiary Hearing.

## II. BACKGROUND

### a. Factual and procedural background

Chase Farmer was a Federal Firearms Licensee ("FFL") and owns the FFL "Shall Not Be Infringed, LLC." ECF No. 24, PageID.363. As such, he was an authorized dealer in common firearms and was licensed to buy, sell, transfer, and manufacture firearms, including machineguns. ECF No. 35, PageID.827. However, in 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began investigating Farmer for unlawfully importing Glock conversion devices and Drop-

2

In Auto Sears ("DIAS") (collectively, "auto sears") from Russia.[1] *Id.* ATF discovered that Farmer had placed multiple online orders for these devices during 2020 and 2021 and that these orders were delivered to various residences with which he was associated. *Id.* On September 27, 2022, ATF executed search warrants at Farmer's residence and FFL premises. ATF agents recovered two unregistered Russian-made DIAS. *Id.*; *see also* ECF No. 24, Page ID.364. However, Farmer had purchased five Glock conversion devices and 15 DIAS in May 2021 which were not found, suggesting that they had been transferred without complying with ATF regulations. *Id.*

As a result, Farmer was indicted on four firearms charges: (1) Receipt and Possession of Unlawfully Imported Firearms, 26 U.S.C. §§ 5844, 5861(k), and 5871; (2) Unlawful Possession of a Machinegun, 18 U.S.C. § 922(o); (3) Unlawful Transfer of a Machinegun, 18 U.S.C. § 922(o); and (4) Failure by Federally Licensed Dealer to Keep Proper Records, 18 U.S.C. § 922(b)(5). ECF No. 23.[2]

Farmer filed a motion to dismiss the indictment, challenging the applicability of the charges and the evidence supporting the indictment. ECF No.

---

[1] Glock conversion devices and DIAS are small metal devices that can convert semi-automatic firearms into fully automatic firearms (machineguns). ECF No. 35, PageID.827 n.1. *See also United States v. Cash*, 149 F.3d 706, 706 (7th Cir. 1998) ("Auto sears enable semi-automatic weapons to be used as fully automatic weapons.")

[2] This indictment superseded a prior indictment which had substantially similar charges. *See* ECF No. 1; ECF No. 24, PageID.365 n.1.

17. He argued, in relevant part, that because the Glock conversion devices and DIAS he sourced from Russia were "unfinished" and would require significant manufacturing to turn firearms into machineguns, they could not be considered a firearm or machinegun. Thus, he could not be criminally liable for crimes involving a firearm or machinegun. *Id.* at PageID.57. The Court rejected this argument under the plain language of the statute, which includes in the term machinegun "any *part* designed and intended solely and exclusively, or a *combination of parts* designed and intended, for use in converting a weapon into a machinegun." ECF No. 27, PageID.384–87; 26 U.S.C. § 5845(b) (emphasis added).

### b. Parties' arguments

In the present Motion for Reconsideration, Farmer argues that under *Loper Bright*, the Court is required to make an independent determination that the Government's interpretation of 18 U.S.C. § 922 and 26 U.S.C. § 5845(b) is correct. ECF No. 31, PageID.405. He states that the Government is relying on the ATF's interpretation of the term "machinegun" for the charges against him, and that under *Loper Bright*, the Court may no longer defer to agency interpretations of ambiguous statutes. *Id.* (quoting *Loper Bright*, 144 S. Ct. at 2273). As such, he argues that *Loper Bright* is an intervening change in law warranting reconsideration in this case. *Id.* at PageID.408. Finally, Farmer maintains that an

4

evidentiary hearing is needed to determine whether Farmer actually violated the statutes under which he is charged. *Id*. at PageID.406.

The Government responds that *Loper Bright* is inapplicable in the current case. ECF No. 35, PageID.829. The Government argues that *Loper Bright* does not change a court's analysis of the plain meaning of statutory text, but only the deference a court must give to an agency's interpretation of ambiguous statutory text. *Id.* at 830. The Government notes that in its Order Denying the Motion to Dismiss, this Court did not rely on or defer to ATF decisions or interpretations of the relevant statutes in determining whether Glock conversion devices and DIAS are "machineguns." *Id.* at PageID.829. Rather, the Court relied on the plain meaning of the statutory definition of "machinegun" in the National Firearms Act. *Id*. As such, according to the Government, *Loper Bright* does not constitute an intervening change of law and the Motion for Reconsideration should be denied. *Id.*

### III. LAW & ANALYSIS

#### A. Legal Standard for Reconsideration

A motion for reconsideration of non-final orders is "disfavored" under the Local Rules and may only be brought upon specific grounds. E.D. Mich. L.R. 7.1(h)(2). Specifically, to prevail on a motion for reconsideration, the movant must show that:

5

    (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision,

    (B) An intervening change in controlling law warrants a different outcome, or

    (C) New facts warrant a different outcome, and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. L.R. 7.1(h)(2)(B); *see also* E.D. Mich. L.Cr.R. 12.1(a). Furthermore, the motion may not rest on the same arguments and issues that the court has previously ruled upon, and it may not raise new legal arguments that could have been presented in the initial motion. *See Joseph v. Sec'y of the VA*, No. 19-cv-10828, 2022 WL 1303173, at *5 (E.D. Mich. May 2, 2022).

    **B. Applicable Law**

    In *Loper Bright Enters. v. Raimondo*, the Supreme Court overruled longstanding precedent regarding the deference a federal court is required to give agency interpretations of ambiguous provisions in administrative statutes. 144 S. Ct. at 2273. Prior to *Loper Bright*, a federal court would give deference to an agency's reasonable interpretation of the statute it administers if the statute was ambiguous. *Chevron, U.S.A, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). The court could not "impose its own construction" on that statute. *Id.* In contrast, if Congressional intent about the meaning of the statute was clear, courts were obliged to follow Congress's intent. *Id.* This framework became

known as *Chevron* deference. *See Loper Bright Enters.*, 219 S. Ct. at 2275 (Gorsuch, J., concurring).

This analysis changed with the Supreme Court's decision in *Loper Bright*. Instead of deference, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," regardless of whether the statute is ambiguous. *Id.* at 2273. As such, the courts alone must decide relevant questions of law and interpret the provisions of the statutes that federal agencies administer. *Id.* at 2265.

ATF is an administrative agency that is tasked with investigation and enforcement of criminal and regulatory violations of federal firearms laws. *See* 28 U.S.C. § 599A. In addition, it promulgates rules pertaining to the possession, use, and sale of firearms. *See* 27 C.F.R. §§ 447, 478, 479. As such, ATF administers the National Firearms Act (26 U.S.C. § 5841 *et seq.*) and the Gun Control Act (18 U.S.C. § 921 *et seq.*). The definition of a "machinegun" is identical in both acts:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

7

26 U.S.C. § 5845(b); 18 U.S.C. § 921(a)(24).[3]

### C. Discussion

Defendant claims that his charges rely on ATF's interpretation of the meaning of the word "machinegun" under the National Firearms Act and the Gun Control Act. ECF No. 31, PageID.404–05. As such, he argues that the Court must reconsider these definitions in light of *Loper Bright*, which requires courts to be the final decisionmaker on statutory interpretation of ambiguous statutes. *Id.* at PageID.405.

However, Defendant is incorrect that the Government relies on the ATF's interpretation of the statute for the charges against him. Instead, the Government relies on the plain language of § 5845(b). That section defines a machinegun as, among other things, "any *part* designed and intended solely and exclusively, or *combination of parts* designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b) (emphasis added). Defendant does not contest that Glock conversion devices and DIAS are parts used to convert semi-automatic rifles into machineguns, i.e., "weapon[s] which shoot[]…automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* Defendant also does not contest that the DIAS and Glock conversion devices are "parts."

---

[3] The Gun Control Act incorporates the definition of machinegun from the National Firearms Act by reference. 18 U.S.C. § 921(a)(24).

8

Indeed, he admits they are "unfinished machine *parts*" and that they must go through a manufacturing process to become useful to "*assemble a machinegun*." ECF No. 17, PageID.58 (emphasis added).

As such, *Loper Bright* is inapposite. The statutory definition of machinegun is plain and unambiguous, and the ATF's interpretation of the statute is not at issue. *See United States v. Dodson*, No. 11-20548, 2012 WL 553534, at *4 (E.D. Mich. Feb. 21, 2012) ("Based upon the plain, unambiguous language of the statute, a DIAS is a combination of parts designed and is intended for use in converting a semi-automatic firearm to a fully-automatic firearm."). Furthermore, this Court did not apply *Chevron* deference to ATF's understandings on this issue when analyzing Defendant's original Motion to Dismiss. *See* ECF No. 27, PageID.386–87 (analyzing the propriety of the charges against Defendant on the statute's plain language).

Other courts have ruled similarly on the question of whether auto sears such as DIAS or Glock conversion devices are machineguns under the statute. *See Dodson*, 2012 WL 553534, at *4 (a DIAS is a "combination of parts" made for use in converting a semi-automatic weapon into a machinegun); *Cash*, 149 F.3d at 706 ("Auto sears enable semi-automatic weapons to be used as fully automatic weapons, which means that auto sears

9

themselves are defined as "machineguns" by 26 U.S.C. § 5845(b)"); *United States v. Was*, 869 F.2d 34 (2d Cir. 1989) (finding that an auto sear is a combination of parts designed and intended to convert a weapon into a machinegun); *United States v. Mitchell*, No. 1:24-cr-9, 2024 WL 2272275, at *2 (N.D. Oh. May 20, 2024) ("Glock switches are considered machineguns under federal statute because they are a part which can transform a firearm into a machinegun"). Thus, there is no problem under *Loper Bright*, because *court* precedent interprets the statute to include devices like DIAS and Glock switches.

The Supreme Court recently discussed the interpretation of the term "machinegun" in *Garland v. Cargill*, 602 U.S. 406, 415–16 (2024). That case arose out of the ATF's regulation that interpreted the term machinegun to include bump stocks, which are devices that can increase the rate of speed at which a semi-automatic firearm shoots. *Id.* at 411–12; *see* 27 C.F.R. § 479.11 (defining "machinegun" to include bump stocks). The Supreme Court found this interpretation incorrect, because the shooter of a gun with a bump stock must release pressure from the trigger and allow the trigger to reset before the trigger could be reengaged for another shot. *Id.* at 421–23. As such, the bump stock does not permit a firearm to automatically shoot

more than one shot with a "single function of the trigger" as is required under the statutory definition of machinegun. *Id.* at 421–22, 424.

To contrast with ATF's incorrect interpretation regarding bump stocks, the *Cargill* court noted ATF's interpretation regarding auto sears. "An auto sear… permits a shooter to fire multiple shots while engaging the trigger only once. ATF has accordingly recognized that modifying a semiautomatic rifle or handgun with an auto sear converts it into a machinegun." *Id.* at 420 n.4.

*Cargill* makes clear that under the definition of machinegun, individual *parts*—just as bump stocks are individual parts—may be considered machineguns *so long as* those parts are designed or intended for use in making a gun shoot automatically, without manual reloading, by a single function of the trigger. *See id.* at 410–11. Furthermore, the *Cargill* court acknowledged that semi-automatic guns with auto sears are converted into machineguns. *Id.* at 420 n.4. Therefore, DIAS and Glock conversion devices, which are designed and intended to turn firearms into machineguns, are also machineguns under the statutory definition.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion for Reconsideration of Motion to Dismiss Indictment and for Evidentiary Hearing

11

[#31] is DENIED because there has not been an intervening change in controlling law that warrants a different outcome. L.R. 7.1(h)(2).

SO ORDERED.

Dated: September 20, 2024

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 20, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager